# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **LONZITA DAVIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00117-O-BP** |
| | § | |
| **ANDREW SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Lonzita Davis ("Davis") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

## I.    STATEMENT OF THE CASE

Davis was born on May 18, 1968 and has a bachelor's degree in interior architecture. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 10-1 at 34, 45. She applied for DIB on March 8, 2017, alleging that her disability began on November 25, 2015. Tr. 23. When she applied, she was forty-eight years old, which is defined as a younger person. Tr. 34. The Commissioner denied her claim initially on June 6, 2017, and upon reconsideration on August 23, 2017. Tr. 23. Davis requested a hearing, which was held before Administrative Law Judge ("ALJ") Herbert J. Green

on July 25, 2018, in Fort Worth, Texas with Davis and her attorney present. Tr. 23. The ALJ issued

his unfavorable decision on October 30, 2018, finding that Davis was not disabled. Tr. 20.

Specifically, the ALJ employed the statutory five-step analysis and established during step

one that Davis had not engaged in substantial gainful activity since filing her application on March

8, 2017. Tr. 25. At step two, he determined that Davis had the severe impairments of somatic

dysfunction of the spine, sacral region and pelvic region; degenerative disc disease of the lumbar

spine; cervicalgia; degenerative joint disease of the shoulders bilaterally status post chromioplasty;

chronic migraines; disequilibrium; obesity; depression; and anxiety. *Id.* He found that Davis had

moderate limitations in two "paragraph B" categories: understanding, remembering, or applying

information; and ability to concentrate, persist, or maintain pace. Tr. 27-28. He also found that

Davis has a mild limitation in interacting with others and in adapting or managing oneself. Tr. 28.

At step three, the ALJ found that Davis's impairments did not meet or medically equal two of the

"marked" impairments listed in 20 C.F.R. Pt. 404(p). Tr. 26. In particular, he concluded that Davis

retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with a sit/stand
> option. The individual cannot climb, kneel, crawl, or squat. The individual can occasionally
> stoop and crouch. The individual cannot work overhead, work at heights, or work around
> moving machinery. The individual retains the capacity to understand, remember, and carry
> out only SIMPLE instructions, make simple decisions, attend and concentrate for extended
> periods, accept instructions, and respond appropriately to changes in routine work settings.

Tr. 29 (emphasis in the original). At step four, the ALJ determined that Davis was unable to

perform any past relevant work, which included being an activity leader, substitute teacher, and a

companion. Tr. 34. At step five, the ALJ determined that there were a significant number of jobs

in the national economy that Davis could perform, so a finding of "not disabled" was appropriate.

Tr. 35-36.

The Appeals Council denied review on September 18, 2019. Tr. 9. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC,

which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

4

### III.    ANALYSIS

Davis raises two issues on appeal. She claims that the ALJ failed to (1) incorporate any limitations for her chronic migraines after he found that they were a severe impairment, and (2) identify work in significant numbers which she can perform. ECF No. 12 at 4, 6.

### A.    Substantial Evidence Supports the ALJ's RFC Determination.

Davis first argues that the ALJ did not incorporate any limitations that are reasonably related to her migraine headaches. *Id.* at 4. She contends that the ALJ acknowledged that her chronic migraines significantly impair her ability to perform activities, yet her RFC does not reflect this determination. *Id.* Although the ALJ included limitations such as being unable to work at heights or around moving machinery to accommodate her chronic migraines, she alleges that he did not include any accommodations related to her inability to be around bright lights or noise during a migraine episode, which she claims to experience three to four times a week, each lasting from six to twelve hours. *Id.* at 4-5. Davis argues that while the ALJ's restrictions of heights and moving machinery may help her other impairments, they do not accommodate her migraine symptoms such as dizziness, memory impairment, neck stiffness, phonophobia, and photophobia. *Id.* at 5.

In response, the Commissioner agrees that her chronic migraines are a severe impairment but argues that the RFC accommodates her impairment. ECF No. 13 at 4. Additionally, he asserts that the objective evidence does not support greater limitations for her migraines as she claims. *Id.* He contends that starting in March 2017, Davis's migraines became well-controlled with medication, lessening the number and intensity of each of her episodes. *Id.* By May 2018, Davis's treatment improved her condition to the point that she was negative for headaches and photophobia. *Id.* at 5. Relying on Fifth Circuit authority, the Commissioner asserts that since

5

Davis's impairment "can reasonably be remedied or controlled by medication or treatment, it is not disabling and does not affect [her] RFC." *Id.* at 4 (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)).

Although Davis "frames the issue as one of substantial evidence, the Court should consider whether the failure of the ALJ to attribute any specific limitation to [Davis's] severe migraine impairment constitutes reversible error." *Sarah B. v. Berryhill*, No. 1:17-cv-0080-BL, 2018 WL 3763837, at *8 (N.D. Tex. June 29, 2018), *rec. adopted*, No. 1:17-cv-080-C-BL, 2018 WL 3756944 (N.D. Tex. Aug. 8, 2018). "Federal courts in Texas have found that when impairments are identified as severe at step two but an RFC does not include any limitations for those impairments, the RFC in effect contradicts the step two finding." *Winston v. Berryhill*, No. 3:16-cv-419-BH, 2017 WL 1196891, at *12 (N.D. Tex. Mar. 31, 2017), *aff'd*, 755 F. App'x 395 (5th Cir. 2017). However, there is a difference between an assessment of RFC and a step two severity finding, and an ALJ "does not err solely because [he] finds an impairment 'severe' at step two but does not attribute any limitation to that impairment in assessing the claimant's RFC." *Sarah B.*, 2018 WL 3763837, at *8 (citation omitted). The Court has held that "an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment" since "the ALJ considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *See Campbell v. Berryhill*, No. 3:15-cv-3913-N-BH, 2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017), *rec. adopted*, No. 3:15-cv-3913-N-BH, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017).

Here, the ALJ expressly considered Davis's severe migraine impairment when assessing her RFC, and therefore he did not err in not attributing a specific limitation to that severe impairment. *See Winston*, 2017 WL 1196861, at *14. The ALJ's decision sufficiently shows that

6

he considered Davis's severe impairment of chronic migraines in his RFC determination despite not specifically identifying a limitation that was solely attributable to her migraines. *See id.*

Furthermore, not only did the ALJ expressly consider Davis's migraine impairment, but he also determined that it does not impose any greater physical or mental limitation than her other impairments as he found her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. Tr. 30. The Court has held that this explains how a claimant's migraine impairment may "qualify an impairment as severe at Step 2 without imposing additional limitations during the RFC assessment." *Sarah B.*, 2018 WL 3763837, at *9. Additionally "there is no reversible error when an ALJ fails to set forth any specific limitation in his RFC assessment relating solely to a Step 2 severe impairment when other limitations account for the severe migraine impairment and no medical evidence indicated that the migraine impairment limits the claimant's ability to sustain any and all gainful employment." *Gonzalez v. Colvin*, No. 4:12-cv-641-A, 2014 WL 61171, at *6-7 & n.9 (N.D. Tex. Jan. 6, 2014).

In this case, Davis testified that she experiences chronic migraines, but she did not support her subjective complaints with objective medical evidence in the record that demonstrates that her chronic pain limits her ability to perform work. Tr. 30. Nevertheless, the ALJ still considered her unsupported allegations of pain and the resulting limitations from her migraine headaches in determining that she retained the ability to perform light work with limitations such as no work overhead, work at heights, or work around moving machinery. Tr. 29.

Substantial evidence in the record supports the ALJ's determination that Davis could perform light work on a sustained basis with "a number of exertional and non-exertional limitations due to clinic findings of tenderness and limited range of motion, in combination with her migraines, balance issues, and obesity, including the light exertional range, as well as a

sit/stand option." Tr. 30. The ALJ evaluated Davis's migraine headaches under the neurological listings and determined that the medical evidence did not support listing-level severity. Tr. 27. He found that Davis's own medical source described her as "an individual with over reporting of somatic, neurological, and cognitive complaints." Tr. 32. He also considered the medical opinions of Scott Spoor, M.D. and William Harrison, M.D. who both opined that Davis could stand or walk for a total of six hours out of an eight-hour workday as well as sit for a total of six hours in an eight-hour workday without any additional limitations because of her migraines. Tr. 32-33. However, the ALJ accommodated Davis's complaints of chronic migraines and balance issues by further restricting her from working at heights or around moving machinery. Tr. 33.

The ALJ also considered the November 2016 medical statement completed by Mohd R. Uddin, M.D., who indicated that Davis was unable to work due to her "chronic headache," but that this disability was not permanent. Tr. 33. The ALJ noted that Dr. Uddin's statement did not include a narrative or a function-by-function assessment, but instead was a questionnaire Davis used to acquire food stamps from a state agency, not to assess Davis's ability to perform work-related activities and mental tasks. Tr. 33. As a result, the ALJ gave it no weight, and an ALJ can assign less weight to a physician's opinion when it is brief and conclusory. Tr. 33; *see Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Additionally, the Court notes that, as the Commissioner points out, impairments controlled by medication are not disabling. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). For example, in *Garcia v. Astrue*, the Fifth Circuit affirmed the district court's finding of no disability where medical reports indicated that depression, headaches, and difficulty concentrating were well controlled with medication, even though the ALJ determined the claimant's headaches to be a severe impairment. 293 F. App'x 243, 245 (5th Cir. 2008).

Here, despite the ALJ determining that Davis's chronic migraines were a severe impairment, the medical evidence indicates that Davis's migraines have been improving with the medication prescribed by her neurologist as she ranked her migraines' severity anywhere from a "0/10" to a "4/10" and claimed that they were improving with the medication. Tr. 514, 525, 551, 583, 597, 602. Moreover, the medical record indicates that Davis was prescribed an increased dosage of her medications to alleviate her migraines, yet she never changed her prescription and instead continued to take the lower dosage. Tr. 433. Consequently, the ALJ found that the medical evidence does not satisfy the severity required to meet any listed impairments in Appendix 1 as they are controlled by medication and, therefore, her migraines do not impair her to do some physical and mental work activities. Tr. 27.

Accordingly, there is no such reversible error when the medical evidence does not support any additional limitation. *See Martinez v. Colvin*, No. 4:12-cv-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013); *Adams v. Colvin*, No. 4:12-cv-490-A, 2013 WL 5193095, at *9 n.6 (N.D. Tex. Sept. 13, 2013). Davis has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings. Therefore, there is no reversible error since the ALJ accommodated her migraines through limiting her work to no heights and no working around moving machinery, and no medical evidence indicated that the migraine impairment limits her ability to sustain any and all gainful employment.

### B.    The Substantial Evidence Supports the ALJ's Step Five Decision.

Davis contends that reversal is required because the ALJ did not identify any occupations which existed in a significant number that she could perform and that are consistent with her RFC. ECF No. 12 at 9.  The vocational expert ("VE") identified three occupations that fit within Davis's RFC: a small products assembler, hand sorter, and smalls items inspector. *Id*. at 6. Davis first

alleges that the VE did not provide a Dictionary of Occupational Titles ("DOT") code number for the small items inspector job, and she is unable to locate it within the DOT. *Id.* at 5. Despite there being no requirement for a citation of the DOT job identification codes, Davis argues that without it, she is unable to locate the job and confirm that it "actually exists." ECF No. 14 at 4. Davis reasons that the Commissioner's determination cannot be based upon "blind faith," but instead must be based upon evidence. *Id.* Second, Davis asserts that the VE's characterization of the exertional or skill level required for the remaining two jobs is facially different from the exertional or skill level provided for that job in the Occupational Outlook Handbook ("OOH"). ECF No. 12 at 6. The VE characterized each job as light with a Specific Vocational Preparation ("SVP") level of two. Tr. 60. However, Davis claims that they are not within her skill set as they require training of more than one month and up to twelve months according to the OOH, and a conflict exists between the DOT and the OOH. ECF No. 12 at 8. She concludes that since the VE did not identify any skills she possesses that are transferable to a small products assembler or hand sorter, the ALJ did not establish any occupations that she can perform. *Id.* at 9.

In response to Davis's claims, the Commissioner asserts that there is no requirement for citation to the DOT job identification number, and Davis thus "abandons her argument concerning this job." ECF No. 13 at 6. Next, he argues that each of the occupations that the VE identified have an SVP level of two and can be learned within one month or following a short demonstration. *Id.* at 5. As to a DOT/OOH conflict, the Commissioner responds that the ALJ need not consider each of the listed publications. Instead, he properly relied on the VE's testimony identifying the jobs Davis could perform based on the DOT. *Id.* at 5-7. Despite Davis's claim that the Commissioner RFC rests on "blind faith," the Commissioner asserts that a "properly phrased hypothetical question" supports the VE's testimony, and this constitutes substantial evidence. *Id.* at 6 (citing

10

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Therefore, the Commissioner concludes that substantial evidence underlies the ALJ's decision, and no evidence indicates that Davis could not perform the three identified jobs. *Id.* at 6.

At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted). The ALJ may consult various sources of evidence, including VEs and the DOT, to determine alternative and available work that the claimant can perform. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009). Social Security Ruling 00-4p requires the ALJ to identify any apparent conflicts that exist between the VE's testimony and the DOT by asking the VE whether such an inconsistency exists. *See* SSR 00-4p, 2000 WL 1898704, at *1-2 (S.S.A. 2000); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted).

The Fifth Circuit has held that a determination of disability will not be upheld when it is based solely on the DOT job description, rather than upon other evidence such as a VE's testimony. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). It also has recognized that the DOT does not purport to include every specific skill or qualification for a particular job, which is why "the value of a [VE] is that that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* at 145 (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). Additionally, "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect

of an individual claimant's limitations on his or her ability to perform a particular job." *Carey*, 230 F.3d at 145.

Here, the ALJ posed a hypothetical question to the VE that included all of the limitations he found that the objective medical evidence supported. He asked the following hypothetical question, which quoted the limitations in the RFC:

> I want you to assume an individual the claimant's age, education and work history. Assume further that this individual is limited to light work. The individual could sit or stand at her option, could not climb, crawl, kneel or squat; could occasionally stop and crouch; the individual could not work overhead, could not work at heights or around moving machinery; and the individual retains the capacity to understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings; sit-stand option means the ability to sit and/or stand for a total of eight hours in an eight-hour day. The individual has the choice of changing positions at will and performing the job in either position. Are there any jobs in the national economy that such an individual could perform?

Tr. 59-60. Basing her testimony on the DOT, the VE testified that such a person would be qualified to be a small product assembler, hand sorter positions, and small item inspectors. Tr. 60. Each of the identified jobs are listed as light with a skill level of SVP two. Tr. 60. The ALJ complied with his duty under SSR 00-4p by then asking the VE, on the record, whether her testimony conformed to the DOT. Tr. 60. The VE testified that it did. *Id.* Davis's counsel had an opportunity to object to the VE's testimony or cross-examine her further regarding any conflicts between her testimony and the DOT, but he declined to do so. Tr. 60-63. Based on the VE's testimony, the ALJ determined that Davis had an RFC for light work with a sit/stand option. Tr. 29.

Davis's claims that the VE's testimony conflicts with the OOH are without merit as SSR OO-4p "only requires the ALJ to resolve apparent conflicts between the VE testimony and the DOT, and it does not additionally require resolution of a 'possible conflict' with the OOH." *Grimes v. Berryhill*, No. 3:16-cv-3280-BH, 2018 WL 1210533, at *11 (N.D. Tex. Mar. 8, 2018); *see* SSR

00-4p, 2000 WL 1898704, *2. The record here does not present any actual conflict between the VE's testimony and the DOT. The ALJ expressly confirmed that the VE's testimony was consistent with the DOT, and Davis has not shown a conflict between the two. Additionally, she did not identify any conflicts at the administrative hearing, and

> applicants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

*Carey*, 230 F.3d at 146-47. Therefore, unless a "direct and obvious conflict" exists between the VE's testimony and the DOT, the ALJ has met his step five burden. *See* SSR-004p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146 (when "direct and obvious conflict" exists between VE's testimony and DOT, ALJ must resolve conflict by determining whether VE's explanation is reasonable and thus more reliable than DOT); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-cv-0651, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011), *rec. adopted*, 2011 WL 2669099 (N.D. Tex. July 6, 2011) (if indirect conflict did not undergo adversarial development at administrative hearing, VE "testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (citation omitted).

Finally, Davis contends that the job of a small item inspector cannot be identified in the DOT, the DOT is outdated, and the ALJ should have relied on the OOH instead. ECF No. 12 at 6-7. "[W]ether the DOT is outdated is not a determination this Court can make." *Walker v. Berryhill*, No. 7:16-cv-00150-O-BP, 2017 WL 6883894, at *5 (N.D. Tex. Dec. 19, 2017), *rec. adopted* 2018 WL 339307 (N.D. Tex. Jan. 9, 2018). The DOT is widely utilized as a standard reference guide, and the Social Security regulations explicitly allow for the ALJ to use it. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); *see Hernandez v. Astrue*, No. A-06-CA-416 LY, 2007 WL 1746896, at *3 (W.D. Tex. June 15, 2007), *aff'd* by 278 F. App'x 333 (5th Cir. 2008). Moreover,

as stated above, the ALJ's duty does not extend to resolving "possible conflicts" with the OOH. *See Duncan*, 2020 WL 6120472, at *14; *see* SSR 00-4p, 2000 WL 1898704, at *2 (citation omitted). Reversal on this basis is not required.

## IV.    CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Davis has not shown that reversal of the decision is required, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** December 7, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

14